IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 03-cv-02578-MSK-CBS

UNIFIED PACKAGING, INC., a Colorado corporation,

    Plaintiff,

v.

3962946 CANADA, INC., d/b/a Canadian Med-Cents, a Canadian corporation,

    Defendant.

_____

**OPINION AND ORDER GRANTING, IN PART, MOTION TO RECONSIDER BUT DENYING FURTHER RELIEF**
_____

    **THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion to Reconsider and to Supplement/Correct the Record **(# 37)**.

    On January 25, 2005, the Plaintiff moved for default judgment **(# 32)** against the Defendant on several claims. On March 7, 2005, this Court received evidence **(# 38)** from the Plaintiff in support of that motion, and found that the Plaintiff was entitled to a judgment against the Defendant in the amount of $ 965,405.39, plus interest **(# 36)** due to breach of a commercial contract. However, the Court found that the Plaintiff had not established a claim under the Colorado Consumer Protection Act for treble damages because the Plaintiff had not established that the Defendant knowingly engaged in a deceptive trade practice, nor that any such practice significantly impacted the public. The Court also found that the Plaintiff had not shown that punitive damages were appropriate under C.R.S. § 13-21-102, because the Plaintiff had failed to

establish that the Defendant acted with fraud, malice, or a willful and wanton state of mind in its dealings with the Plaintiff.

On March 17, 2005, the Plaintiff filed the instant motion, which, in many respects, simply amplifies arguments made by the Plaintiff at the hearing. The only new factual allegations contained within the Motion are: (i) a clarification that customer funds were payable to the Defendant, not, as the Plaintiff believes the Court assumed, to the Plaintiff; (ii) that Mark Wilson misrepresented his status as President of the Defendant to the Plaintiff, when, in fact, the corporate president was a different individual; and (iii) that Wilson and the Defendant's president had been the subject of a 2001 default judgment in an unrelated case involving misuse of credit cards. The Court reconsiders its findings in light of these new facts and legal argument presented by the Plaintiff, but finds nothing that warrants modification of its earlier ruling.

With regard to the Consumer Protection Act claim, the Court previously found that the Plaintiff failed to demonstrate the essential element that the challenged conduct "implicated the public as consumers." *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). In the instant motion, the Plaintiff cites to *Hall* for the proposition that it has standing to assert a Consumer Protection Act claim despite the fact that it was not the party to whom misrepresentations were made. This argument highlights differences between the posture of the parties in *Hall* relative to this case. In *Hall*, the Colorado Supreme Court interpreted the Consumer Protection Act to extend standing to third parties who were injured as a result of a defendants unfair trade practices directed at consumers. 969 P.2d at 235. Specifically, the defendants in *Hall* misrepresented to their customers that the defendants had secured permission for the customers to use an easement

over the plaintiff's land, when, in fact, neither the easement nor the claimed permission actually existed.

Although the Plaintiff speculates to the contrary, the record before the Court indicates that the Defendant's actions here, unlike in *Hall*, did not concern deceptive trade practices directed toward consumers, but instead only the Defendant's breach of contract and alleged fraud in a commercial transaction with the Plaintiff.  In summary, the Plaintiff contends that the Defendant misrepresented to it that Defendant had a list of customers who had consented to have informational binders shipped to them.  Based on this representation, Plaintiff assembled and shipped the binders, but never received payment from the Defendant for that service. Ultimately, many customers to whom the binders were shipped declined to accept them– despite the Defendant's representation <u>to the Plaintiff</u> that the customers had expressly requested the binders– and the shipping agent to return the binders to the Plaintiff.

While it may be true that the Defendant was deceitful in its dealings with the Plaintiff (a finding the Court need not, and thus does not, make), such deceit gives rise to a private cause of action but not necessarily a Consumer Protection Act claim.  The record is silent as to whether there was any communication between the Defendant and the identified customers or, if there was such communication, what it was.  Thus, there is no evidence that any communications <u>by the Defendant</u> <u>to the customers</u> were deceptive.  Although the record is clear that most customers rejected the binders, there is no evidence in the record suggesting that the Defendant attempted to deceive the customers into believing they had agreed to purchase the binders, nor that the Defendant otherwise represented the same facts <u>to the customer</u> that it did <u>to the Plaintiff</u>.  In the absence of evidence that the Defendant made misrepresentations to or otherwise deceived

customers, the Plaintiff has not established that the Defendant's deceit of the Plaintiff "implicated the public as consumers."  The Plaintiff makes a passing argument that customers were inconvenienced by having to refuse delivery of the binders, and that such inconvenience is a sufficient impact on consumers to support a Consumer Protection Act claim, but cites no law clearly establishing that proposition.  In the absence of such authority, the Court cannot find that the "inconvenience" of rejecting unsolicited goods is a harm that the Consumer Protection Act was intended to address.  Accordingly, the Plaintiff has not proved a Consumer Protection Act claim entitling it to an award of treble damages.

Plaintiff also argues that the Court should infer that the Defendant acted with fraudulent intent, sufficient to justify an award of punitive damages. The Court agrees with the Plaintiff's legal argument that such intent may be established by inference, but, again, the record is insufficient for the Court to draw such an inference.  The testimony at the hearing was that the Defendant represented to the Plaintiff that it had purchased the names of the prospective customers from a telemarketing firm, and that the telemarketing firm had canvassed the customers and obtained their consent to receive the Defendant's product. The newly presented facts are that the identity of Defendant's president was not accurately disclosed, that a default judgment had previously been imposed against Wilson and the president of the Defendant, and that customer payments were to be remitted to the Defendant rather than to the Plaintiff.

Viewing the totality of the evidence, including the new submissions, the Court still cannot properly infer that the Defendant intended to defraud the Plaintiff.   No evidence establishes that Defendant's initial representation to the Plaintiff was untrue, or that the agents of the Defendant knew that the representation was untrue when it was made.  It is possible that the

Defendant did not obtain the names of pre-qualified customers from a telemarketer, or that the Defendant knew that the customers had not consented to receive the binders; in such circumstances, the Defendant's representations to the Plaintiff would be fraudulent.  However, it is equally plausible that the Defendant was misled by an unscrupulous telemarketing firm and that the Defendant believed in good faith that the customer names and consents it passed on to the Plaintiff were bona fide.   It is also possible that both the Defendant and the telemarketer acted in good faith, and that some unknown accident resulted in the telemarketer giving the Defendant, or the Defendant giving the Plaintiff, an incorrect customer list.  That the Defendant was to receive payment, that the president of the Defendant was not accurately identified, and that there had been a prior default judgment entered in another, unrelated, action have little relevance[1] in assessing the veracity of the Defendant's initial representation to the Plaintiff. Such evidence could be consistent with either a truthful or untruthful representation by the Defendant.

The Plaintiff has the burden of proving fraud by a preponderance of the evidence. The Court appreciates that the Plaintiff believes that it has been defrauded, and indeed, as a matter of ontological truth, it may have been.  However, the evidence presented is insufficient to show, directly or by inference, that the Defendant acted with fraudulent intent in its initial representations to with the Plaintiff, and thus, the Court cannot award punitive damages.

---

[1] Plaintiff relies heavily upon the fact that the prior default judgment was based upon misuse of credit cards which it contends is in the nature of a fraud claim.  Precisely because the judgment was entered by default, the nature of the claim has no significance.  No facts were specifically found by the court entering the judgment.  This Court has no way of knowing whether the Defendants declined to respond in the action because they intended to admit some kind of fraud or for some other reason.  Moreover, the fact that the Defendant's principals might have engaged in fraud in the past does not, of itself, justify an inference that they have done so in the present.  *See generally* Fed. R. Evid. 404(b) (prior bad acts not admissible to show present conformity therewith, except in certain specific situations).

Accordingly, the Plaintiff's Motion for Reconsideration **(# 37)** is **GRANTED IN PART**, insofar as the Court has reconsidered its prior findings in light of new evidence and argument, but **DENIED IN PART**, insofar as the Court sees no basis to depart from its prior rulings. Based on the foregoing, the Plaintiff's Motion for Default Judgment **(# 32)** is **GRANTED**, and the Court will enter judgment against the Defendant in the amount of $ 965,405.39, plus interest. A separate judgment shall enter simultaneously with this Order, and the Clerk of the Court shall close this case.

Dated this 11th day of August, 2005.

**BY THE COURT:**

*[signature]*

Marcia S. Krieger
United States District Judge